# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

## CASE NO. 17-20158-CIV-MARTINEZ/GOODMAN
## (CASE NO. 12-20496-CR-MARTINEZ)


THOMAS KEELAN,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/


## REPORT AND RECOMMENDATIONS
## RECOMMENDING DENIAL OF § 2255 MOTION

Movant Thomas Keelan filed a motion to vacate his conviction and sentence for using a cell phone and the internet to knowingly persuade, induce, or entice a minor to engage in illegal sexual activity. [ECF No. 3]. Keelan argues that his conviction and sentence should be vacated under 28 U.S.C. § 2255 because (1) his trial counsel was constitutionally ineffective, and (2) his Fifth Amendment due process rights were violated. *Id.* The Government filed a response in opposition to Keelan's habeas petition [ECF No. 20] and Keelan filed a reply [ECF No. 24].[1] United States District Judge Jose E.

---

[1]    Keelan also filed a Motion for Discovery [ECF No. 14], which the Undersigned previously denied. [ECF No. 17].

Martinez referred the § 2255 motion to the Undersigned. [ECF No. 5].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court **deny** Keelan's habeas motion.

## I.    Factual and Procedural Background

This case involves conduct that took place between Keelan, a 51-year-old teacher, and his former student J.S., then 15 years old. *U.S. v. Keelan*, 786 F.3d 865, 865-69 (11th Cir. 2015). On direct appeal of his conviction, the Eleventh Circuit described the facts surrounding Keelan's arrest:

> Acting on a rumor circulating through the school, Keelan confronted J.S. after class about his cutting. Keelan offered words of comfort and encouraged J.S. to call or text him whenever he felt the urge to cut. At Keelan's suggestion, they began meeting each other during the school lunch hour to play chess in Keelan's classroom and discuss J.S.'s emerging identity issues.

> One night Keelan texted J.S. and revealed he was at a gay bar on South Beach. J.S. told Keelan he believed he was gay. After this exchange, Keelan and J.S. began texting and talking each day for several hours, and Keelan began inserting sexual innuendo into their conversations. Keelan eventually asked J.S. if he wanted to have sex with him, and J.S. said yes.

> At trial, Dr. Terri Patterson, an expert in child exploitation offenses, testified Keelan's interactions with J.S. were part of the "grooming process" typically employed by child predators. The six phases of grooming—identification, connection, information gathering, need fulfillment, sexual inhibition reduction, and preservation—were intended to establish Keelan's psychological control over J.S. Based on her review of the evidence, Dr. Patterson opined Keelan groomed J.S.
> . . .

> During J.S.'s junior year of high school, Keelan moved to Virginia to take a new teaching job. Despite the long distance, Keelan selected, reserved, and

paid for a room in a Hollywood, Florida hotel where he and J.S. had sex.

For reasons unknown to J.S., his parents began to suspect he was in an inappropriate relationship with Keelan. During his senior year of high school, J.S.'s parents enrolled him at a wilderness camp in Georgia and a residential treatment center in Texas. J.S. could not communicate with Keelan during this time. When Keelan returned to Florida, J.S. decided he wanted to cooperate with law enforcement officials.

A few months before his 18th birthday, J.S. made wiretapped phone calls to Keelan. Keelan revealed he kept one of J.S.'s old vocabulary tests in which J.S. scored a perfect 20 out of 20. Keelan kissed it "every day" and kept it as a talisman of J.S. During one call, Keelan admitted he was masturbating to the sound of J.S.'s voice and said he loved the way J.S. performed oral sex.

On June 1, 2012, Keelan and J.S. agreed to meet at the Hollywood Gateway Inn at Hollywood, Florida. Keelan reserved a room for seven nights with two adults and one king-sized bed. On June 15, 2012, Keelan began driving from Virginia to South Florida. On June 16, 2012, law enforcement officers surveilled Keelan stopping at the Lion's Den in Fort Pierce, Florida. While there, Keelan bought several sex toys before resuming his journey toward J.S.

Later that day, Keelan arrived at the hotel where officers arrested him and searched his car. The search uncovered a wide array of sex toys, bondage devices, lubricant, and pornographic DVDs featuring young adult males. Following his arrest, Keelan admitted to his sexual relationship with J.S.

*Id.* at 868-69.

On January 25, 2013, a jury found Keelan guilty of knowingly using a means of interstate commerce to persuade, induce, or entice J.S. to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). *Id.* at 869; [CRDE No. 93].[2] Keelan was convicted of

---

[2]      References to the docket in the underlying criminal case will be to "CRDE" and references to the instant civil § 2255 habeas case will be to "ECF."

enticing a minor to engage in sexual activity from Fall 2009 through Summer 2011 (Count 1), and one count of *attempting* to commit the same offense from May 9 to June 16, 2012 (Count 2). *Keelan*, 786 F.3d at 869. Keelan was sentenced to 200-months imprisonment. [CRDE No. 174].

At trial, Keelan admitted that he used his email and a cell phone to contact J.S. and did have sex with him. [ECF No. 24, p. 5]. But the defense's theory was that Keelan did not persuade J.S. because J.S. was pursuing Keelan, not the other way around. *Id.* Keelan filed a pre-trial motion to introduce evidence of prior sexual activity under Federal Rule of Evidence 412(b). [CRDE No. 29]. Keelan argued that evidence establishing that J.S. had engaged in consensual sexual activity with 40-50 individuals, all of the same age and demographic background as Keelan, would rebut the Government's argument that Keelan persuaded J.S. to engage in sexual activity and would rebut J.S.'s testimony on that point. [ECF No. 29, p. 1]. Judge Martinez denied the motion, finding that "the prior sexual activity of JS has no bearing" on whether Keelan knowingly attempted to persuade JS to engage in sexual activity. [CRDE No. 34, p. 2].

Keelan also filed a pre-trial motion in limine to exclude evidence at trial of the graphic details surrounding Keelan and J.S.'s sexual activity, sex toys found in Keelan's car after his arrest, and pornography found in Keelan's home and car. [CRDE No. 73]. Keelan argued this evidence was not relevant to the offense and was grossly prejudicial. *Id.* at pp. 1-2. Judge Martinez denied the motion in limine because he "agree[d] with the

Government and f[ound] this evidence to be highly relevant and essential to the case." [CRDE No. 85].

On April 26, 2013, Keelan filed a notice of appeal. [CRDE 120]. Keelan argued, in addition to other claims not relevant to his habeas motion, that the District Court erred by: (1) denying his motion in limine to exclude "irrelevant, highly prejudicial, and graphic testimony and physical evidence . . . pertaining to specific homosexual activity between Mr. Keelan and J.S."; and (2) denying Keelan's motion to introduce evidence of "J.S.'s consensual sexual activity with other males of the same age and demographic background as Mr. Keelan," which Keelan claimed was relevant to whether J.S. was persuaded into sexual activity and relevant to J.S.'s credibility. [ECF No. 20-1, p. 5].

The Eleventh Circuit affirmed Keelan's conviction. *Keelan*, 786 F.3d at 869 n.1 ("Keelan also raised the following: . . . the district court erred in admitting J.S.'s testimony about the sex acts performed with Keelan [and] pornographic videos found; . . . and the district court erred in denying his sealed Federal Rule of Evidence 412(b) motion. We affirm these . . . issues without discussion.").

## II.    Legal Standard and Analysis

Keelan argues that he is entitled to relief under § 2255 because his trial counsel was constitutionally ineffective and that his Fifth Amendment due process rights were violated. [ECF No. 3]. Specifically, he argues that his counsel was constitutionally ineffective by: (1) failing to make a reasonable investigation of J.S.'s mental state and

failing to introduce evidence of J.S.'s mental state in order rebut an element of the offense and impeach J.S.; (2) failing to object to the Government's introduction of evidence that amounted to a constructive amendment of the indictment; and (3) failing to object to legally incorrect jury instructions regarding Count 2. Keelan argues that his Fifth Amendment Due Process rights were violated because: (1) the Government withheld evidence of J.S.'s history of baiting older mean online and J.S.'s mental state (*Brady* violation); and (2) the prosecutor made improper statements during closing argument that violated his due process rights. Finally, Keelan argues that, at a minimum, he is entitled to an evidentiary hearing on his habeas claims.

As explained below, the Undersigned finds these arguments unpersuasive.

### a. Keelan's Ineffective Assistance of Counsel Arguments Fail on the Merits.

To prevail on an ineffective assistance of counsel claim, a petitioner like Keelan must establish: (1) deficient performance -- that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice -- that but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 691 (1984); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Review of counsel's conduct is highly deferential, and courts will not second-guess an attorney's strategic decisions. *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994). Courts should presume counsel was *effective*. *White v. Singletary*, 972 F.2d 1218, 1220 (11th

Cir. 1992). Because a wide range of performance is *constitutionally* acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). To be unreasonable, the performance must be such that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (internal citations omitted). And, the burden of proving ineffective assistance of counsel remains with the petitioner at all times. *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000).

Keelan argues that his counsel was constitutionally ineffective by: (1) failing to make a reasonable investigation of J.S.'s mental state and failing to introduce evidence of J.S.'s mental state in order rebut an element of the offense and impeach J.S.; (2) failing to object to the Government's introduction of evidence that amounted to a constructive amendment of the indictment; and (3) failing to object to legally incorrect jury instructions regarding Count 2. The Undersigned disagrees.

### i. Counsel's purported failure to make a reasonable investigation and present evidence regarding J.S.'s mental state

Keelan argues that his trial attorneys should have investigated further and presented at trial more evidence of J.S.'s mental state at the time of the relationship with Keelan in order to rebut an essential element of the offense and to impeach J.S.'s testimony. Specifically, Keelan argues that his counsel should have presented evidence that J.S. *pursued* older men online, not merely that he had sex with many older men before.

First, J.S.'s mental state would not rebut an element of the offense. Rather, the only *mens rea* at issue was Keelan's and whether **Keelan** knowingly used a means of interstate commerce to persuade, induce, or entice J.S. to engage in sexual activity. *See* 18 U.S.C. § 2422(b). Keelan could have been convicted under 18 U.S.C. § 2422(b) for communicating solely with an undercover agent posing as a minor, who would not have had an intent to engage in sexual activity. *See United States v. Rutgerson*, 822 F.3d 1223, 1233 (11th Cir. 2016) (finding evidence sufficient to support conviction under § 2422(b) where the defendant requested sex with an undercover agent posing as an underage prostitute). The intent of the minor victim, J.S. was irrelevant to the elements of the offenses charged.

Thus, counsel's performance can hardly be considered deficient for failing to present evidence to support a futile argument. *See Broughton v. Buss*, No. 11-Civ-60099, 2011 WL 13134626, at *13 (S.D. Fla. Aug. 3, 2011 ("The decision does not constitute deficient performance because reasonable counsel could have concluded that pursuing such an unsupported and outlandish theory would have been unsuccessful."); *see also Rizo v. United States*, 662 F. App'x 901, 903 (11th Cir. 2016) (finding counsel not deficient for failing to bring implausible alibi defense).

Further, Keelan's counsel did in fact attempt to bring in evidence relating to J.S.'s prior sexual conduct with other men, but Judge Martinez found that evidence to be irrelevant, harassing, and inadmissible under Rule 412(a). [CRDE No. 34]. The Eleventh Circuit affirmed this decision on direct appeal. *See Keelan*, 786 F.3d at 869 n.1. During the

trial, defense counsel attempted to question J.S. about his letters to his parents about his desire to get away from his home and sexual communications with other adult men. *See* ECF No. 20-4, pp. 54-98. Judge Martinez denied these requests but permitted Keelan to question J.S. about his initial pursuit of Keelan and the "sexting" he did with Keelan. *Id.* at pp. 55-60. It was the defense's theory that J.S. could not be lured into sexual conduct that he himself sought out. *See* ECF No. 20-4, p. 4. There is nothing to support the theory that presenting further evidence on this point (i.e., that J.S. was sexually predisposed to having sex with older men) would have been successful for the defense.

Consequently, the Undersigned finds that Keelan has failed to show his counsel was ineffective on this point or that Keelan suffered prejudice as a result of this alleged ineffective performance. *See Strickland*, 466 U.S. at 687.

### ii. Counsel's alleged failure to object to introduction of evidence that amounted to a constructive amendment of the indictment

Keelan argues that the jury was provided a "mountain of evidence" pertaining to:

> Keelan's interstate travel to have sex, his reservation of hotel rooms for sex, his purchase of sex toys, his possession of pornography, his rental of kayaks to paddle to an island for sex, his games of chess in his classroom with J.S., and his various in-person conversations with J.S. about his sexual orientation, and their use of sex toys, bondage, and other manner and means of engaging in sexual intercourse.

[ECF No. 3, p. 23]. Keelan argues that this evidence had nothing to do with the gravamen of his offenses and that his trial attorneys were ineffective for failing to object to the Government's introduction of evidence (which amounted to a constructive amendment

to the indictment).

The Undersigned disagrees. Similar to Keelan's other ineffective assistance of counsel claims, the Undersigned finds that Keelan is attempting to reargue an argument already made unsuccessfully at trial and on appeal (or that could have been made on appeal) under the guise of an ineffective assistance of counsel claim.

First, the Undersigned agrees with the Government that the information regarding Keelan's long-term grooming and enticement of J.S. (outside of cellphone and internet communications) were relevant to the Government's rebuttal of Keelan's entrapment arguments [ECF No. 20-4, pp. 104-105] and is relevant background information, which explained how the relationship unfolded.

Second, Keelan's trial counsel did in fact object to the introduction of this evidence as a constructive amendment of the indictment and sought a mistrial on that basis:

> Based on that slide, and I just want to add it to the record so it's clear, described about 17 things that Mr. Keelan did. Only two or three of them involved the use of a cell phone or the internet. **By arguing those things that that's how Mr. Keelan committed this crime, the Government has *constructively amended* the indictment far beyond what's alleged by saying that first that he committed this crime through means that didn't involve interstate commerce**, like spanking him and taking him kayaking. And also through means of interstate commerce that are not alleged in the indictment like his purchasing a phone calls. I'm sorry. Purchasing of hotel rooms. So I move for mistrial on that basis.

[ECF 20-4, p. 106 (emphasis added)]. Judge Martinez denied defense counsel's motion for a mistrial. And Keelan raised a similar argument on appeal (i.e., that Judge Martinez erred by denying his motion in limine to exclude "irrelevant, highly prejudicial,

and graphic testimony and physical evidence . . . pertaining to specific homosexual activity between Mr. Keelan and J.S."), but the Eleventh Circuit affirmed this issue in the Government's favor. *See Keelan*, 786 F.3d at 869 n.1 ("Keelan also raised the following: . . . the district court erred in admitting J.S.'s testimony about the sex acts performed with Keelan [and] pornographic videos found . . . We affirm these . . . issues without discussion."). There is nothing to support the argument that further objections from defense counsel would have resulted in a favorable ruling by Judge Martinez.

Consequently, the Undersigned finds that Keelan has failed to show his counsel was ineffective on this point or that Keelan suffered prejudice as a result of this alleged ineffective performance. *See Strickland*, 466 U.S. at 687.

### iii. Counsel's so-called failure to object to legally incorrect jury instructions regarding Count 2

Keelan argues that his trial attorneys were ineffective for failing to object to the jury instructions agreed to by the parties regarding Count 2 of the indictment for "attempt." Keelan points to the following jury instructions:

> In some cases, it's a crime to attempt to commit an offense -- even if the attempt fails. ln this case the Defendant is charged in Count 2 of the Indictment with a violation of Title 18, United States Code, Section 2422(b), beginning on or about May 9, 2012, and continuing through on or about June l6, 2012. That Section makes it a Federal crime for anyone, ***using any facility or means of interstate or foreign commerce***, to attempt to persuade, induce, or entice anyone under 18 years old to engage in any sexual activity for which any person could be charged with a criminal offense.

The Defendant can be found guilty of the offense charged in Count 2 of the lndictment only if all of the following facts are proved beyond a reasonable doubt:

> First: the Defendant knowingly persuaded, induced, or enticed J.S. to engage in sexual activity, as charged;

> Second: the Defendant used the internet and a cellular phone to do so;

> Third: when the Defendant did these acts, J.S. was less than 18 years old; and

> Fourth: the individual engaging in the sexual activity could have been charged with a criminal offense under the law of Florida.

The Defendant can be found guilty of an *attempt* to commit **that** offense only if both of the following facts are proved beyond a reasonable doubt:

> First: The Defendant knowingly intended to commit the crime of persuading, inducing, or enticing a minor to engage in sexual activity; and

> Second: The Defendant's intent was strongly corroborated by his taking a substantial step towards committing the crime.

So the Government must prove that one or more of the individuals engaging in the sexual activity could have been charged with a criminal offense under the laws of Florida.

As a matter of law the following acts are crimes under Florida law; Under Florida Statute § 777.04(1), a person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt. Moreover, under Florida Statute § 794.05, a person commits a crime when the person is 24 years of age or older and engages in sexual activity with a person 16 or 17 years of age.

"Sexual activity," as used in Florida Statute § 794.05, means the oral, anal,

12

or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object; however, sexual activity does not include an act done for a bona fide medical purpose.

[ECF No. 3, pp. 25-26]; [CRDE No. 91, pp. 11-12 (emphasis added)].

Keelan argues that the instructions were erroneous for two reasons.

First, he argues that the section of the instructions containing the pattern instructions for "attempt" misstated the first element by omitting "using the internet and cellular phone." Keelan argues that, because the words "using the internet and cellular phone" were omitted from the attempt instruction, the jury could have convicted Keelan for an attempt that is lacking a use of the internet or cellular phone and would constitute a constructive amendment of the indictment.

This is unsupported. The instruction does provide that Count 2 makes it a crime for anyone, "***using any facility or means of interstate or foreign commerce***, to **attempt** to persuade, induce, or entice anyone under 18 years old to engage in any sexual activity . . ." [ECF No. 91, p. 11 (emphasis added)]. And to the extent that the interstate commerce nexus was not mentioned again in specifically discussing the additional proof needed for the attempt charge,[3] this was unnecessary. The previous paragraph includes the

---

[3]     The Defendant can be found guilty of an attempt to commit that offense only if both of the following facts are proved beyond a reasonable doubt:

First: The Defendant knowingly intended to commit the crime of persuading, inducing, or enticing a minor to engage in sexual activity; and

necessary elements for the completed offense, including the requirement that Keelan used the internet and a cellular phone.

Second, Keelan argues the instruction gave two choices for 'acts [that] are crimes under Florida law' with the first 'act' being the Florida crime of 'attempt." [ECF No. 3, p. 26]. The specific provision provides:

> As a matter of law the following acts are crimes under Florida law; Under Florida Statute § 777.04(1), a person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt. Moreover, under Florida Statute § 794.05, a person commits a crime when the person is 24 years of age or older and engages in sexual activity with a person 16 or 17 years of age.

[ECF No. 3, pp. 25-26]; [CRDE No. 91, pp. 11-12].

Keelan argues that by providing two alternative "theories" of Florida Statutes that were violated, the instructions provided an obvious improper basis for the jury to convict Keelan for "attempting" the Florida offense of attempting to commit any offense prohibited by Florida law. [ECF No. 3, pp. 26-27].

The Undersigned finds that, while the extra "attempt" may be superfluous, it does not materially change the offense. It does not instruct the jury to find that the offense can be committed in more than one way because an attempt to attempt to commit offense is

---

Second: The Defendant's intent was strongly corroborated by his taking a substantial step towards committing the crime.

*Id*.

simply an attempt to commit the offense. Keelan fails to describe how this language could be interpreted to mean that the offense could be committed in more than one way or how it broadened the conduct punishable under this offense. And he fails to point to any case law involving analogous language that was found to be improper.

Accordingly, the Undersigned does not find that Keelan's counsel's failure to object to the jury instruction was in error and that "no competent counsel would have taken the action that his counsel did take." *See Grayson*, 257 F.3d at 1216 (internal citations omitted).

### b. Keelan's Due Process Claims Are Procedurally Barred and Fail on the Merits.

Keelan argues that the Government violated his Fifth Amendment due process rights by (1) withholding evidence of J.S.'s history of baiting older men online and other online communications reflecting his intent at the time he met Keelan (*Brady* violation),[4] and (2) the prosecutor's improper statements during closing argument. The Undersigned finds these arguments fail because they are procedurally barred, and, even if they were not procedurally barred, they also fail on the merits.

A motion to vacate under § 2255 is not a substitute for a direct appeal, and issues which could have been, but were not raised on direct appeal, are procedurally barred. *See*

---

[4]      Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), it is a violation of due process for the Government to suppress evidence favorable to the accused when that evidence "is material either to guilt or to punishment."

*Lynn v. United States*, 365 F.3d 1225, 1234-35 (11th Cir. 2004); *see also Bousley v. United States*, 523 U.S. 614, 621 (1998). However, a movant may overcome this procedural bar if he can show (1) "cause" for not raising the ground on direct appeal and (2) "actual prejudice" from the alleged error, or (3) a fundamental miscarriage of justice (i.e., factual innocence). *See Lynn*, 365 F.3d at 1234; *see also Bousley*, 523 U.S. at 622-24. To prove "cause," Keelan "must show that some objective factor external to the defense prevented [Keelan] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [Keelan's] own conduct." *Lynn*, 365 F.3d at 1235.

Here, Keelan's due process claims were available at the time he filed his direct appeal, but he did not include these arguments in his direct appeal. *See Keelan*, 786 F.3d at 869. Thus, Keelan is procedurally barred from raising these arguments in his habeas petition. *See Lynn*, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.").

Further, Keelan cannot overcome this procedural bar because he cannot show "cause" and "actual prejudice," or factual innocence. *See Lynn*, 365 F.3d at 1234. Any due process claim regarding the prosecutor's comments made during closing argument was clearly available to Keelan at the time of his direct appeal and Keelan provides no

explanation as to what prevented him from raising that claim in the direct appeal.[5]

As to the Government's alleged failure to turn over "evidence of JS's history of baiting older men online and his 'mental state'" [ECF No. 3, p. 31], Keelan states in his reply that, at the time of the direct appeal, "the undisclosed evidence had *yet to be* discovered." [ECF No. 24, p. 6 (emphasis added)]. However, Keelan fails to explain what new evidence was discovered after the direct appeal was filed and how Keelan's counsel obtained that information. Thus, Keelan has not shown "cause" as it applies to this argument, as well.

Regardless, Keelan cannot show actual prejudice because, during trial, Keelan was in possession of evidence supporting the notion that J.S. engaged in prior sexual activity with other older men. This included a 14-page letter written by J.S. to his parents "about

---

[5] The Undersigned finds that this argument also fails on the merits. Keelan points to the prosecutor's references to Keelan and J.S.'s time together and to the things that Keelan did to groom J.S. and gain his trust, and the prosecutor's statement that these things "would have enticed J.S." and supported that Keelan was guilty of the charged offenses. [ECF No. 3, pp. 35-36]. Keelan argues that this misstates the law because the prosecutor left out the required use of the internet or a cell phone to entice Keelan, as required under § 2422(b).

Even so, Keelan does not point to other evidence supporting his argument that the jury was not properly instructed on the requirement that a means of interstate commerce was required for this offense (here -- the internet or a cell phone) and the jury instruction was clear that it **was** required [CRDE No. 91, p. 9]. Thus, any ambiguity on this point during the prosecutor's closing statement appears to be harmless. *See Cox v. McNeil*, 638 F.3d 1356, 1361 (11th Cir. 2011) (affirming lower court's finding that prosecutor's misstatement of law during closing argument was harmless where law was clearly specified in jury instructions).

his mental state and sexuality, his preference for men [Keelan's] age, his communication of affection and sexual desires for men [Keelan's] age, and his sexual overtures to other men [Keelan's] age prior to meeting [Keelan];"and an email "about J.S.'s communications with other men the same age as [Keelan]. [*See* ECF No. 14, p. 2].

Judge Martinez found that evidence establishing that J.S. engaged in consensual sexual activity with 40-50 individuals, all of the same age and demographic of Keelan, to be irrelevant, harassing, and inadmissible under Rule 412(a). [CRDE No. 34]. Thus, there is no reason to believe that additional evidence supporting the same premise, i.e., that J.S. "baited" and engaged in prior sexual activity with other older men, would have been found relevant and admissible under Rule 412(a) and would have changed the outcome of the trial.

J.S.'s state of mind was not relevant to whether *Keelan* knowingly used a means of interstate commerce to persuade, induce, or entice J.S. to engage in sexual activity under 18 U.S.C. § 2422(b). The only *mens rea* at issue was Keelan's. Again, Keelan could have been convicted under 18 U.S.C. § 2422(b) for communicating solely with an undercover agent posing as a minor, who would not have had an intent to engage in sexual activity. *See Rutgerson*, 822 F.3d at 1233 (finding evidence sufficient to support conviction under § 2422(b) where the defendant requested sex with an undercover agent posing as an underage prostitute).

Thus, even if Keelan's *Brady* claim was not procedurally barred,[6] it fails on the merits as well because Keelan cannot show that J.S.'s communications to other older men and his state of mind would be relevant to Keelan's guilt. And further, any such evidence would not have been admitted by Judge Martinez. *See* CRDE No. 34.

### c.  Keelan Is Not Entitled to an Evidentiary Hearing

Finally, the Undersigned finds that Keelan is not entitled to an evidentiary hearing on his claims. As discussed above, his due process claims are procedurally barred, and his ineffective assistance of counsel arguments fail without reference to any specific facts that require further clarification through an evidentiary hearing. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (internal citation omitted) ("A petitioner is not entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics."); *see also Scott v. United States*, 598 F.2d 392, 393 (5th Cir. 1979) ("Contrary to the movant's assertions, the right to a hearing is not established simply by filing a petition under 28 U.S.C. § 2255. When claims for habeas relief are based on unsupported generalizations, a hearing is not required.").

---

[6]     Further, Keelan cannot overcome this procedural bar by establishing "factual innocence" because he has not presented evidence undermining the Undersigned's confidence in the outcome of the trial. *See Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) ("[A] federal court may also grant a habeas petition on a procedurally defaulted claim . . . where a constitutional violation results in the conviction of someone who is actually innocent.").

### III.     Certificate of Appealability

"Section 2253(c) bars appeals from 'final order[s]' in § 2255 proceedings '[u]nless a circuit justice or judge issues a certificate of appealability.'" *Jackson v. United States*, 875 F.3d 1089, 1090 (11th Cir. 2017) (quoting 28 U.S.C. § 2253(c)(2)). Section 2253(c) permits the issuance of a certificate of appealability only where a petitioner has made a "substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citation omitted). This requires the petitioner to, in turn, show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (internal quotations omitted).

Here, Keelan's due process claims are procedurally barred and his ineffective assistance of counsel arguments are factually inaccurate and unsupported. Thus, it does not appear that reasonable jurists could debate whether Keelan's petition should have been resolved in a different manner. Accordingly, the Undersigned **respectfully recommends** that Judge Martinez **not** issue a certificate of appealability.

### IV.     Conclusion

For the reasons discussed above, the Undersigned **respectfully recommends** that the District Court **deny** Keelan's habeas motion.

## V.     Objections

The parties will have 14 days from the date of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, February 11, 2020.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez
Counsel of Record