UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 17-20158-CIV-MARTINEZ/GOODMAN
(CASE NO. 12-20496-CR-MARTINEZ)

THOMAS PATRICK KEELAN,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

## REPORT AND RECOMMENDATIONS
### RECOMMENDING DISMISSAL OF FED. R. CIV. P. 60(d)(3) MOTION

Movant Thomas Keelan filed a motion to set aside his conviction and sentence for using a cell phone and the internet to knowingly persuade, induce, or entice a minor to engage in illegal sexual activity. [ECF No. 55]. Keelan argues that his conviction and sentence should be set aside under Federal Rule of Civil Procedure 60(d)(3) because of fraud on the court. *Id.* The Government filed a response in opposition to Keelan's 60(d)(3) petition [ECF No. 57] and Keelan filed a reply [ECF No. 59].[1] United States District Judge Jose E. Martinez referred the case to the Undersigned for a ruling on all pre-trial, non-

---

[1] Keelan also filed a Motion for Discovery [ECF No. 58], which the Undersigned previously denied. [ECF No. 62].

dispositive matters, and for a Report and Recommendation on all dispositive matters. [ECF No. 5].

For the reasons discussed below, the Undersigned **respectfully recommends** that the District Court **dismiss** for lack of jurisdiction Keelan's motion to set aside his conviction.

I. **Factual and Procedural Background**

This case involves conduct that took place between Keelan, a 51-year-old teacher, and his former student J.S., then 15 years old. *U.S. v. Keelan*, 786 F.3d 865, 865-69 (11th Cir. 2015). On direct appeal of his conviction, the Eleventh Circuit described the facts surrounding Keelan's arrest:

> Acting on a rumor circulating through the school, Keelan confronted J.S. after class about his cutting. Keelan offered words of comfort and encouraged J.S. to call or text him whenever he felt the urge to cut. At Keelan's suggestion, they began meeting each other during the school lunch hour to play chess in Keelan's classroom and discuss J.S.'s emerging identity issues.
>
> One night Keelan texted J.S. and revealed he was at a gay bar on South Beach. J.S. told Keelan he believed he was gay. After this exchange, Keelan and J.S. began texting and talking each day for several hours, and Keelan began inserting sexual innuendo into their conversations. Keelan eventually asked J.S. if he wanted to have sex with him, and J.S. said yes.
>
> At trial, Dr. Terri Patterson, an expert in child exploitation offenses, testified Keelan's interactions with J.S. were part of the "grooming process" typically employed by child predators. The six phases of grooming—identification, connection, information gathering, need fulfillment, sexual inhibition reduction, and preservation—were intended to establish Keelan's psychological control over J.S. Based on her review of the evidence, Dr. Patterson opined Keelan groomed J.S.

. . .

>During J.S.'s junior year of high school, Keelan moved to Virginia to take a new teaching job. Despite the long distance, Keelan selected, reserved, and paid for a room in a Hollywood, Florida hotel where he and J.S. had sex.
>
>For reasons unknown to J.S., his parents began to suspect he was in an inappropriate relationship with Keelan. During his senior year of high school, J.S.'s parents enrolled him at a wilderness camp in Georgia and a residential treatment center in Texas. J.S. could not communicate with Keelan during this time. When Keelan returned to Florida, J.S. decided he wanted to cooperate with law enforcement officials.
>
>A few months before his 18th birthday, J.S. made wiretapped phone calls to Keelan. Keelan revealed he kept one of J.S.'s old vocabulary tests in which J.S. scored a perfect 20 out of 20. Keelan kissed it "every day" and kept it as a talisman of J.S. During one call, Keelan admitted he was masturbating to the sound of J.S.'s voice and said he loved the way J.S. performed oral sex.
>
>On June 1, 2012, Keelan and J.S. agreed to meet at the Hollywood Gateway Inn at Hollywood, Florida. Keelan reserved a room for seven nights with two adults and one king-sized bed. On June 15, 2012, Keelan began driving from Virginia to South Florida. On June 16, 2012, law enforcement officers surveilled Keelan stopping at the Lion's Den in Fort Pierce, Florida. While there, Keelan bought several sex toys before resuming his journey toward J.S.
>
>Later that day, Keelan arrived at the hotel where officers arrested him and searched his car. The search uncovered a wide array of sex toys, bondage devices, lubricant, and pornographic DVDs featuring young adult males. Following his arrest, Keelan admitted to his sexual relationship with J.S.

*Id.* at 868-69.

On January 25, 2013, a jury found Keelan guilty of knowingly using a means of interstate commerce to persuade, induce, or entice J.S. to engage in sexual activity, in

violation of 18 U.S.C. § 2422(b). *Id.* at 869; [CRDE No. 93].[2] Keelan was convicted of enticing a minor to engage in sexual activity from Fall 2009 through Summer 2011 (Count 1), and one count of *attempting* to commit the same offense from May 9 to June 16, 2012 (Count 2). *Keelan*, 786 F.3d at 869. Keelan was sentenced to 200-months imprisonment. [CRDE No. 174].

At trial, Keelan admitted that he used his email and a cell phone to contact J.S. and did have sex with him. [ECF No. 24, p. 5]. But the defense's theory was that Keelan did not persuade J.S. because J.S. was pursuing Keelan, not the other way around. *Id.* Keelan filed a pre-trial motion to introduce evidence of prior sexual activity under Federal Rule of Evidence 412(b). [CRDE No. 29]. Keelan argued that evidence establishing that J.S. had engaged in consensual sexual activity with 40-50 individuals, all of the same age and demographic background as Keelan, would rebut the Government's argument that Keelan persuaded J.S. to engage in sexual activity and would rebut J.S.'s testimony on that point. [ECF No. 29, p. 1]. Judge Martinez denied the motion, finding that "the prior sexual activity of J[.]S[.] has no bearing" on whether Keelan knowingly attempted to persuade J.S. to engage in sexual activity. [CRDE No. 34, p. 2].

Keelan also filed a pre-trial motion in *limine* to exclude evidence at trial of the graphic details surrounding Keelan and J.S.'s sexual activity, sex toys found in Keelan's

---

[2] References to the docket in the underlying criminal case will be to "CRDE" and references to the instant civil § 2255 habeas case will be to "ECF."

4

car after his arrest, and pornography found in Keelan's home and car. [CRDE No. 73]. Keelan argued this evidence was not relevant to the offense and was grossly prejudicial. *Id.* at pp. 1-2. Judge Martinez denied the motion in *limine* because he "agree[d] with the Government and f[ound] this evidence to be highly relevant and essential to the case." [CRDE No. 85].

On April 26, 2013, Keelan filed a notice of appeal. [CRDE No. 120]. Keelan argued, in part, that the District Court erred by: (1) denying his motion in *limine* to exclude "irrelevant, highly prejudicial, and graphic testimony and physical evidence . . . pertaining to specific homosexual activity between Mr. Keelan and J.S."; and (2) denying Keelan's motion to introduce evidence of "J.S.'s consensual sexual activity with other males of the same age and demographic background as Mr. Keelan," which Keelan claimed was relevant to whether J.S. was persuaded into sexual activity and relevant to J.S.'s credibility. [ECF No. 20-1, p. 5].

The Eleventh Circuit affirmed Keelan's conviction. *Keelan*, 786 F.3d at 869 n.1 ("Keelan also raised the following: . . . the district court erred in admitting J.S.'s testimony about the sex acts performed with Keelan [and] pornographic videos found; . . . and the district court erred in denying his sealed Federal Rule of Evidence 412(b) motion. We affirm these . . . issues without discussion.").

Following the resolution of his appeal, with the assistance of counsel, Keelan filed a habeas motion requesting relief under § 2255, alleging that his trial counsel was

5

constitutionally ineffective, and his Fifth Amendment due process rights were violated. [ECF No. 3]. Specifically, he argued that his counsel was ineffective by: (1) failing to conduct a reasonable investigation into J.S.'s mental state and failing to introduce evidence of J.S.'s mental state in order to rebut an element of the offense and impeach J.S.; (2) failing to object to the Government's introduction of evidence that amounted to a constructive amendment of the indictment; and (3) failing to object to legally incorrect jury instructions regarding Count 2. *Id.* As part of his due process allegations, Keelan claimed that: (1) the Government withheld evidence of J.S.'s history of baiting older men online and J.S.'s mental state (an alleged *Brady* violation); and (2) the prosecutor made improper statements during closing argument that violated his due process rights. *Id.*

After receiving the Government's response [ECF No. 19] and Keelan's Reply [ECF No. 24], the Undersigned recommended that the District Court deny Keelan's request for habeas relief. [ECF No. 25]. Keelan filed objections to the report and recommendations. [ECF No. 34]. The District Court adopted the Undersigned's Report and Recommendations in its entirety, denied Keelan's habeas petition and denied issuance of a certificate of appealability. [ECF No. 35].

Keelan appealed the District Court's non-issuance of a certificate of appealability to the Eleventh Circuit Court of Appeals. After articulating Keelan's burden of proof to obtain a certificate of appealability, United States Circuit Judge Robin S. Rosenbaum denied Keelan's request, stating,

>Here, reasonable jurists would not debate the district court's denial of Keelan's claims. As to Claim 1, the record confirms that counsel attempted to introduce evidence of J.S.'s mental state and questioned J.S. regarding his mental state at trial. As to Claim 2, the record shows that counsel filed a motion in limine to exclude trial evidence on the details of Keelan's sexual relationship with J.S. and objected to the government's closing arguments referencing those details. As to Claim 3, counsel was not deficient because the district court listed Keelan's use of the internet and a cellular phone as an element of the crime and any additional words regarding the Florida crime of attempt did not change the government's burden or allow the jury to convict for an uncharged crime. Finally, Claim 4 was procedurally defaulted for Keelan's failure to raise those points on direct appeal, and he did not show cause and prejudice or actual innocence to overcome the default.

*Keelan v. United States*, No. 20-11487-E, 2020 WL 6158469, at *2 (11th Cir. Aug. 13, 2020), cert. denied, 141 S. Ct. 1525, 209 L. Ed. 2d 259 (2021).

Keelan then sought the District Court's permission to file a successive § 2255 motion and requested the appointment of counsel. [ECF No. 52]. The District Court denied Keelan's requested relief on the following basis:

>This Court lacks jurisdiction to grant Movant permission to file a second or successive motion to vacate because Movant can only seek such authorization from the Eleventh Circuit, pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A). *See Farris v. United States*, 333 F.3d 1211, 1216 (11th Cir. 2003); *see also* Rules Governing § 2255 Proceedings, Rule 9. Moreover, the Court cannot appoint counsel for Movant because he is already represented by counsel and the Local Rules for the Southern District of Florida prohibit a party from filing pro se pleadings while represented by counsel. *See* S.D. Fla. L.R. 11.1(d)(4).

[ECF No. 53].

In his instant motion, Keelan attempts to proceed under Rule 60(d)(3) so that he may avoid § 2255's one-year statute of limitations and its requirement that any successive

7

motion be approved by the appropriate court of appeals.

## II. Legal Standard

Rule 60(d)(3) allows a court to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3). A proper Rule 60(d)(3) motion is one that "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the *federal habeas proceedings*." *Gonzalez v. Crosby*, 545 U.S. 524, 532, 125 S. Ct. 2641, 2648, 162 L.Ed.2d 480 (2005) (emphasis added). On the other hand, a motion that attacks a "federal court's previous resolution of a claim *on the merits*," or which "seeks to add a new ground for relief" does not constitute a proper Rule 60(d)(3) motion, but rather a habeas petition under 28 U.S.C. § 2255. *Id*. (emphasis added).

"Rule 60 motions for relief from judgment may not be used to evade the bar on second or successive § 2254 [or § 2255] petitions."[3] *Viera v. Fla. Dep't of Corr.*, 817 F. App'x 810, 812 (11th Cir. 2020), cert. denied sub nom. *Viera v. Fla. Dep't of Correction*, 141 S. Ct. 2532, 209 L. Ed. 2d 558 (2021). Thus, a Rule 60 motion will be construed as a second or

---

[3] Although § 2255(h) and § 2254(b) -- the provisions which prohibit federal and state prisoners from filing successive habeas petitions without appellate permission -- are not identical, the Eleventh Circuit and its sister Circuits have determined that they should be treated the same for purposes of analyzing their relationship with Rule 60. *Gilbert v. United States*, 640 F.3d 1293, 1323 (11th Cir. 2011) (en banc), abrogated on other grounds by *McCarthan v. Dir. of Goodwill Indus. Suncoast, Inc.*, 851 F.3d 1076 (11th Cir. 2017) (en banc); *see also United States v. Buenrostro*, 638 F.3d 720, 722 (9th Cir. 2011) ("Because § 2254 is nearly identical to § 2255 in substance . . . [w]e agree with our sister circuits and hold that *Gonzalez* applies to such motions."); *accord Curry v. United States*, 507 F.3d 603, 604–05 (7th Cir. 2007); *Nailor v. United States (In re Nailor)*, 487 F.3d 1018, 1021–23 (6th Cir. 2007); *United States v. Nelson*, 465 F.3d 1145, 1147 (10th Cir. 2006).

successive habeas petition when it raises new grounds for relief or attacks the merits of the underlying judgment. *Id.*

### III. Analysis

Keelan begins the summary of his fraud allegations by claiming that he "was used to get MONEY FOR MURDER." [ECF No. 55]. Following this provocative -- but unsubstantiated -- statement is Keelan's contention that his relationship with J.S. saved J.S.'s life and his belief that J.S.'s family, FBI agents, the prosecution, and his defense attorneys all conspired to coerce perjury and suppress evidence. *Id.*

Keelan then attacks the legitimacy of the evidence presented at the trial as well as the Eleventh Circuit's assessment of his appeal. He claims that he was set up and that the only crime for which he is guilty is the crime of statutory rape, which would have resulted in him being released years ago.

As a basis for his "fraud" claim, Keelan claims the following dishonest arguments were made to the court: (1) his actions caused J.S.'s suicidal behavior; (2) he was J.S.'s first older lover; and (3) that he persuaded, enticed, induced, or coerced J.S.

As so-called evidence of this fraud, Keelan includes alleged trial or hearing testimony followed by his own statements that the testimony was untruthful or inaccurate. As an illustration of the structure of Keelan's argument, the Undersigned provides the following excerpt from Keelan's motion:

> FACT: AUSA Johannes correctly asserted that J.S.'s multiple prior lovers were known to the government. (Quote "F": Keelan quoting Johannes's

9

>response to 2255, approved by Goodman and Martinez)
>
>FRAUD: J.S. twice at trial said Keelan was first. The quotations are AUSA Altman in summation. Thus, according to Johannes, Altman knew he was lying. That Keelan was the first was the main point of McAliley's restitution ruling. As well, J.S. said, "I, uhm, never experienced anything sexual before," in the statement given to the grand jury.

[ECF No. 55, p. 6].

After he finishes addressing trial and hearing testimony, Keelan then transitions his focus to statements allegedly made by the Government in its closing argument that, in Keelan's opinion, are either false statements unsupported by evidence or are statements that contradict the elements of the crimes with which he was convicted. According to Keelan, these statements constitute a crime under 18 U.S.C. § 1623, criminalize the fact that his "love" prevented a suicide, and make homosexual acts assault before the law.

In his final argument on the merits, Keelan alleges his defense attorney made three major mistakes. Keelan believes these mistakes were intentional because his attorney was either cooperating with the prosecution or was homophobic. Specifically, Keelan alleges his attorney: (1) should have moved to change the venue of the trial; (2) failed to assert a selective or vindictive prosecution defense; and (3) failed to expose false grand jury testimony.

At the end of Keelan's motion, he includes an ancillary argument that the prison in which he is housed has treated him unfairly by, among other allegations, disconnecting

his phone calls, delaying his mail, and prohibiting him from giving interviews.

In the Government's response, it characterizes Keelan's motion as an attack on the merits of the underlying conviction. [ECF No. 57]. This, it claims, transforms Keelan's Rule 60 motion into a § 2255 motion. And, as the Government highlights, Keelan has previously litigated an unsuccessful § 2255 motion -- which would make this improperly titled motion successive.

The Undersigned agrees with the Government's characterization. It is obvious that Keelan's arguments are meant to address only his underlying conviction and appeal.

In fact, many of the claims Keelan raises in this motion are nearly identical to claims raised in his first § 2255 motion. In both motions, Keelan complains about J.S.'s alleged prior interactions with other older gay men and his seeming assent to sexual activity with Keelan. *Compare* [ECF No. 3, pp. 18-22, 31-34] *with* [ECF No. 55, pp. 2, 6, 10]. Likewise, in both motions, Keelan claims the Government made improper statements during the trial. *Compare* [ECF No. 3, pp. 34-36] *with* [ECF No. 55, pp. 7-8].

The label of Keelan's motion is not determinative of its treatment. Federal courts "have an obligation to look behind the *label* of a motion filed by a *pro se* inmate . . . ." *United States v. Jordan*, 915 F.2d 622, 624-25 (11th Cir. 1990) (citation omitted) (emphasis added). In this case, many of Keelan's "fraud" claims are identical to those raised in his initial § 2255 motion attacking the underlying proceedings. Further, his new ineffective assistance of counsel and collusion claims also seek to challenge the underlying

proceedings.

Because of this, his motion is properly considered as a second or successive § 2255 motion. *See Cano v. United States*, 796 F. App'x 647, 648 (11th Cir. 2019) (holding that where movant filed a Rule 60(d)(3) motion and his specific allegations of misconduct occurred before his conviction and related only to the integrity of his trial court proceedings, the district court correctly treated the motion as a successive § 2255 petition).

The actual nature of Keelan's Rule 60(d)(3) motion is made even more apparent by its lack of evidence or argument supporting the crux of a Rule 60(d)(3) claim -- fraud on the court. As stated by the Eleventh Circuit, "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court." *Galatolo v. United States*, 394 F. App'x 670, 672 (11th Cir. 2010) (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) (internal quotations and alterations omitted)).

But the types of allegations raised by Keelan -- lies by the prosecution and perjury at the trial level -- have been specifically rejected as valid Rule 60(d)(3) claims. *Baker v. United States*, 791 F. App'x 884, 885 (11th Cir. 2020) (affirming treatment of movant's claims that "prosecutor had committed a fraud on the court by withholding information concerning witness perjury and by using "lies" told by the victim" as § 2255 claims and not Rule 60(d)(3) claims).

Thus, the Undersigned finds that Keelan's motion is actually a § 2255 motion

unsuccessfully masquerading as a Rule 60(d)(3) motion. And, because Keelan has previously filed a § 2255 motion, this motion qualifies as a second or successive motion.

"Before presenting a second or successive motion, the moving party must obtain an order from the appropriate court of appeals authorizing the district court to consider the motion." Rules Governing § 2255 Proceedings, Rule 9. As authorization has not been granted, this Court lacks jurisdiction to consider Movant's second or successive § 2255 motion. *See Farris v. United States*, 333 F.3d 1211, 1216 (11th Cir. 2003).

Therefore, the Undersigned **respectfully recommends** that the District Court **dismiss** Keelan's motion for lack of jurisdiction.

Further, because the court "lack[s] subject matter jurisdiction to consider the [instant] successive petition, [the court may] not issue a [certificate of appealability]." *See Williams v. Chatman*, 510 F.3d 1290, 1295 (11th Cir. 2007) (citation omitted).

### IV.     Conclusion

For the reasons discussed above, the Undersigned **respectfully recommends** that the District Court **dismiss** Keelan's habeas motion.[4]

### V.     Objections

The parties will have 14 days from the date of this Report and Recommendations

---

[4] In the Government's response, it provides an alternative argument on how Keelan's motion, if treated as a proper Rule 60(d)(3) motion, fails on the merits. [ECF No. 57]. However, in the Undersigned's view, it is so patently obvious that Keelan's motion is nothing more than an improperly titled, successive § 2255 motion that it is unnecessary to analyze the merits of Keelan's purported "fraud" claims.

within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, April 1, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez
Counsel of Record